This honorable appellate court for the 2nd District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justice Anne B. Jorgensen and Justice Mary S. Shostak. The case is number 220028, People of the State of Illinois, Plaintiff-Appellee v. Charles Edward Boyer, Defendant-Appellant. Arguing for the appellant, Richard K. Russo. Arguing for the appellee, Amy M. Watrova. All right, good morning, counsel. And thank you for participating. We do apologize for the delay. Zoom makes things a little interesting and requires a lot of phone calls and clicking and things that take time. So hopefully we have not delayed important issues on your part. But we will begin then with Mr. Russo. Thank you, Your Honor. Good morning. Your Honors, counsel, may it please the court. My name is Richard Russo, and I'm representing Charles Boyer, the appellant defendant in this matter. In this case, the state failed to prove that Charles Boyer, a 61-year-old man, acted unreasonably in disciplining his 15-year-old daughter. The focus of the state's argument is twofold. First they argue that Charles has waived the parental discipline argument because it was not properly pled as an affirmative defense before or during the trial. Second, the state argues that the trial court properly found Charles' daughter to be more credible than Charles during their trial testimony. I'd like to address that second issue first. I don't believe that credibility is the issue here. And further, for the sake of this argument, even if we only consider the testimony of the daughter, the parental discipline argument would still be viable. She testified on page 27 of the record that he took my earbuds out so I would listen to him. On page 17, he started yelling at me that I should not treat him that way and that I was to listen to him. And then on page 16, she said, I said I did not want to be talked to. I'm sorry. I'm not in the best mood right now. I continued to wash the dishes. I did not want to have a conversation with someone. He ripped them out of my ears so I would be able to hear him because he was angry that I was not listening to him. Now, when we do also consider just the parts of Mr. Boyer's testimony that were consistent with his daughter's statements, it further clarifies this point. Charles testified between pages 68 and 70 of the record that I reached up and pulled out her left earbud. I took her arm, wanting her to turn around toward me. I grasped her left arm between her shoulder and elbow, closer to her elbow, I think. I kept a hold of her to keep from falling. She grabbed the crutch and started hitting me with it. Then between pages 75 and 80, he further testified, it annoyed me. I don't think children should be allowed to dictate to their parents when they'll let them talk to them. I had to tell her something about the dog. After I tried repeatedly to get her to talk to me or listen, I got up and approached her. She made it very clear that she knew I was there and she wasn't going to talk to me. Now, they don't disagree on basically what happened. They just have very different perspectives. On the one hand, we have a teenage daughter who sees Charles as a harassing and overbearing burden that she's being forced to tolerate or deal with when she's admittedly in a bad mood and stayed home from school. On the other hand, we have Charles, who's a father recovering from a significant surgery that he had just a few days before this incident. He sees his teenage daughter who's being intentionally rude and disobedient, and he did what he did to try to compel her attention by removing her headphones and physically turning her and holding her in front of him so that he could talk to her. Now, during that process, he did apparently cause a bruise or red mark on her arm, but that mere fact that the bruise or mark is there does not make his conduct any less reasonable. In Green, which was cited in our brief, the court said that the presence, or in that case, the absence of a physical injury was not determinative of reasonable discipline. Rather, the action in and of itself is to be judged as to whether it was reasonable or unreasonable. In Green, the situation was a mother who was witnessed by several people in a school parking lot striking her 10-year-old son 8 to 16 times with a snowbrush. She apparently did not cause any physical injury, but under the circumstances present in that case, the court found her action to be unreasonable parental discipline. Our case is much different, though, because in our case, Charles did not strike his daughter in any way. He simply grabbed her to get her attention and held her in place while he attempted to speak to her. Charles had an absolute right to reasonably discipline his minor child. This is a right that cannot be waived and that must be rebutted by the state in order to prove that he acted without lawful authority and was, in fact, guilty of domestic battery beyond a reasonable doubt. The right to parental discipline is a common law right, which has been recognized by Illinois courts since the 1800s. As the state acknowledged in their brief, and this court recognized in Green, parental child statutes, and I would argue that it follows, that it is therefore not required to be pled in writing or otherwise prior to or during the trial. And while it is true that Charles' trial counsel did not explicitly argue the parental right to discipline a child, both Charles and his daughter gave testimony, which clearly indicated that that's what happened here. Illinois Statute 725 ILCS 5112A-3, which was cited in our brief, gives the definitions of certain words for purposes of domestic violence cases. They define the word abuse as meaning physical abuse, harassment, or intimidation of a dependent, interference with personal liberty, or willful deprivation. That definition specifically says it does not include reasonable direction of a minor child by a parent. Now the legislature used that same definition of abuse in the Illinois Dissolution of Marriage Act, also cited in our brief. Now the state primarily relied upon People v. Bardsley for its argument that Charles has waived his right to parental discipline argument. This was a wrong interpretation of that case, though. First of all, the cases are factually very distinguishable. In Bardsley, the defendant was convicted of attempted assault after attempting to bite an orderly in a hospital who was adjusting his restraints. No affirmative offense for self-defense was previously filed or pled. The defendant simply testified that he did not intend to bite the orderly, and he was only biting his restraints, and the orderly just happened to be in his way. The trial court there, or the court there, rather, found that it could not see any lawful authority for trying to bite off one's restraints, and therefore, when the defendant turned his head and lunged toward the orderly, he was, in fact, committing an assault. The court further held that the defendant had forfeited the affirmative defense of self-defense because it was not properly raised or pled in the trial court. However, the court further found that the assault statute language, without lawful authority, was not an element in the offense of the attempt to assault. Here, however, because of the common law rule that allows for reasonable parental discipline, the phrase without lawful authority is an element that absolutely needs to be proved beyond a reasonable doubt for domestic battery. Much as the court in Bardsley discussed that in a case where someone is charged with home invasion, the state must prove one's lack of lawful authority to enter the home in order to prove the home invasion charge, here, the state must also show that one lacks the lawful authority to discipline a child in order to successfully prove a domestic battery. The Bardsley court further said that the main reason a defendant must specifically raise an affirmative defense is to alert the state as to what it must rebut. Now, here, the state was absolutely aware that the defendant was the father of MB. All of the witnesses testified as much, and the very nature of the domestic battery charge requires a type of familial relationship. The testimony that was offered by both Charles and his daughter as to what transpired between them that evening was very plainly a disciplinary action by the father. And the state, therefore, needed to show that Charles' actions went beyond the realm of reasonable discipline and, in fact, amounted to a criminal offense of domestic battery. So, the question really should be whether Charles' physical discipline of his teenage daughter, essentially by grabbing her by the arm and holding her in place to look and listen to him, was so unreasonable that it amounts to the criminal offense of domestic battery. We submit that his conduct was reasonable, was not in any way excessive or without lawful authority, and, therefore, the state failed to prove him guilty beyond a reasonable doubt of domestic battery. We ask that you reverse his conviction in the court below, and I am now prepared to answer any questions you may have. Thank you, Mr. Russo. Justice Jorgensen, do you have any questions? My question is, is it your position, then, that this is not an affirmative defense? Yes, Your Honor. So, the state, in its case-in-chief, should rebut parental discipline in domestic battery charges where the victim and the defendant are parent and child? I would suggest that, certainly, in a case where the defendant is a parent and the victim is a child, I think the state then has to prove that the defendant acted without lawful authority. When the defendant is, in fact, a parent and the victim is his child, I think the state then has to prove that what he did was outside of his lawful authority as the parent disciplining a child. Why wouldn't the state here simply assume that you were going to suggest either that this conduct never occurred, just it never happened, or some other defense? Why would there be any assumption that it was parental discipline? Well, I would say, in this case, they would not need to assume that that was the case. Both parties had made statements to the police, which the state was in possession of when preparing for the case. The state's own witness testified as to what happened, and her testimony was essentially that she was in a bad mood, she didn't want anything to do with her dad, she was completely ignoring him, and that he used force to try to compel her to listen to him. Does it matter here that both testified that the father was angry? I don't think it does. I mean, I would argue that in most cases where a parent is disciplining a child, there's some level of anger or displeasure, and that's what's brought about the circumstances where the parent feels they need to intervene with some sort of discipline. So it is your position, then, that the defense need not give the state any notice, not in the form of raising an affirmative defense, orally suggesting anything short of closing argument? Is that your position? I believe my position is that the defendant is not required to give any notice beyond simply the testimony that's presented at trial that asserts that this is what the circumstances were that led to the incident. I think that it's incumbent upon the state in any case where they're child, I think that's just something that should be automatic. They should assume, we have to show that this was not reasonable discipline. Okay, I have nothing else. Thanks. Yes. Justice Shostak, do you have any questions? No, Justice Jorgenson asked my question. Thank you. Okay. Counsel, in cases that we review, we usually defer to the trial court on issues of credibility because we can read the transcript, but we can't observe body language, see the faces, whatever the case may be. I think there is some reference in this record about maybe some of the faces that the victim was using while she was testifying, but that was someone's interpretation as opposed to us seeing her face as she testified. How then do we disregard that credibility, even if it's just a matter of interpretation? They're telling the same story, but the trial judge says, I believe her story as opposed to the defendant's story. Well, again, I think the issue here is not one of credibility of who told the truth or who was more believable. I think the problem that we're asserting happened here where it's simply that neither the state nor the trial judge ever considered the parental discipline aspect of the case. The case was apparently decided on just as if these were two strangers and this was an interaction that happened between them, whether they believed the daughter's version or the father's version and who was more credible. The judge clearly found that he believed that the daughter's version of what happened was more credible, but I think for the purposes of our argument, even if we assume that the daughter's testimony was 100% accurate, I think by her own statements, she said that she was ignoring her dad. He was getting upset with her because she was ignoring him and that he physically removed her headphones and held her telling her that he wanted her to really need to resolve the issue of who was more credible. I think if you just take her own statements on their face, you can still come to the same conclusion that the parental discipline argument applies to this fact scenario. All right. As I recall, the judge was concerned about the headphones and possibly the ponytail, but the real issue was the fingers on the arm that the officer saw that were pretty clear at that point in time and the fact that although the daughter admits to in some way striking the defendant, there are no visible marks on the defendant. Does that account relate to his credibility or who he believed versus who he didn't believe as completely? Well, I would say certainly that was apparently something the judge considered. He mentioned it. I don't know what relevance it would have whether the father had any visible injuries when the daughter did admit to striking him multiple times. I believe specifically on page 22 of the record, she said that she hit his head because she wanted to get away from him. Then she did that two or three more times. Again, I don't think that the credibility of the witnesses should be the issue that needs to be described. She described a situation where her father was unhappy with her disrespectful behavior and was trying to compel her to do what he wanted her to do. That is the very definition of a parental discipline type of situation. I think the fact that nobody addressed that in the court below as being one of the things that was considered, I think it was incumbent upon the state to prove that he acted without the lawful authority. I think it's clear in this case that he had the lawful authority to discipline his daughter. Because she would not listen to him at that particular time about a dog that had been apparently whining and scratching through most of the day while she was home, that you believe is sufficient grounds to discipline in a manner that left a visible bruise or markings on her arm. Well, again, I think what the courts and I think what this court said in People versus Green was that the result of the interaction is not the focus of the argument. The argument is whether what he did was reasonable. I would say certainly a father grabbing hold of his 15-year-old daughter by the arm and holding her in place while he attempted to speak to her was reasonable. I think when you further consider that he was essentially on one leg at the time due to the surgery just a few days before, that I mean that would further explain why he was holding on to her in the way that he was, especially after she started hitting him. So again, I think that there's nothing unreasonable about taking a 16-year-old or a 15-year-old, rather, by the arm and holding them while you try to address them as a parent. All right. Thank you very much, sir. You will have an opportunity to reply if you choose to after Ms. Watroba finishes. And if you are ready, you may proceed, Ms. Watroba. Thank you, Your Honor. Good morning, Honorable Justices Council. Again, my name is Amy Watroba from the DuPage County State Attorney's Office on behalf of the people. May it please the Court. The defendant in this case does not dispute that the state proved the elements of domestic battery beyond a reasonable doubt. The only issue at bar is whether the state also disproved an affirmative defense that defendant never raised during the trial below. As outlined in our brief, it's the state's position that this claim of an affirmative defense is not properly raised for the first time on appeal and that People v. Bardsley is directly on point and controlling in this case. Insofar as defendant suggests in his reply brief that trial counsel was ineffective for not overtly raising the affirmative defense, the people would note that that argument is also forfeited. Forfeiture issues aside, under the Collins standard, defendant's claim nonetheless fails. Considering the facts in the light most favorable to the people, there was no evidence of any parental right to discipline being an issue in this case. The trial court expressly found defendant's testimony to be incredible and even under even considering either parties, the victim or the defendant's version of events, neither version showed that defendant was in any way intentionally disciplining his daughter when he grabbed her arm to the extent that it caused the injury. And it's the arm contact that formed the basis of the conviction for domestic battery. Rather, defendant testified that he was acting in a manner of self-preservation because his daughter was the aggressor and he was the victim. So for those reasons and everything outlined in our brief, including the fact that the trial judge as the finder of fact in this case is presumed to affirm defendant's conviction and I would invite any questions from the justices that you may have for me. Thank you, Ms. Petrova. Justice Jorgensen, do you have any questions? Here's my question. What does the defendant have to do to raise this defense? Well, because this is a misdemeanor offense, obviously it doesn't have an under the statutes and the rules of discovery, which are different for misdemeanors, obviously, than felonies. There's not the same type of written notice or, you know, overt notice requirement that would apply in a felony case. However, I think Bardsley, you know, specifically addresses this because Bardsley notably was also a misdemeanor case and Bardsley also was a bench trial. And I think this court acknowledged that that's actually part of the problem is that in a situation like this, where there is no, let's say, you know, express or statutory or rule based requirements for a formal notification that you cannot raise it for the first time on appeal. This court and Bardsley somewhat punted, I should say, for lack of a better word, deciding how much needs to come out, basically. But I would suggest and point this court to obviously the body of case law out there that would apply to other types of affirmative defenses. And that's to look at the evidence to see if it was in fact, quote unquote, raised. And I would say, again, this case is in the same posture as Bardsley. So I would suggest that this that I would liken it to if this had been a jury trial instead of a bench trial, that would have triggered the need for some type of instruction. There is no IPI, I believe, on the issue of this particular defense. But there are cases out there where defense attorneys have requested non-IPI instructions. So it's very clear from this record that if this had been a jury trial, there would have been no request for an instruction because it was not the defense theory at trial. And I would kind of in response to opposing counsel's comments, in response to questioning, I would note that the people, first of all, the people's position that we did disprove a reasonable parental right to discipline by virtue of the facts. The facts just don't support that defense. So I think what defendant is suggesting is almost that the state is somehow obliged to argue that in closing argument, which of course is not evidence, even if defense counsel doesn't argue it. And that doesn't make sense. Yeah, that was my only question. Thank you. Thank you. Thank you, Justice Jorgensen. Justice Shostak, any questions? Yeah, in a bench trial, certainly defense attorneys and the state proceed a little differently than they would in a jury trial, i.e. a little more informal, if you will. Isn't it incumbent or isn't it inclusive in the facts of this case, that this, unlike Bairdley, in this case, isn't it clear that it was apparent in child relationships? And isn't it evidence that when he was arguing and presenting witnesses, that the defendant did testify that was his daughter, and he didn't like to be disrespected, etc. You couldn't state and infer from all of the evidence that it in fact was apparent child relationship in a parental discipline case? I would say no. I think that defendant's position, which he just outlined, is that anytime you have a parent-child relationship, then the parental right to discipline would automatically be at issue. And I am aware of no case law that suggests that. I would also suggest that that mode of thinking would again be contrary to the general concept of affirmative defenses. Although this is kind of a unique affirmative defense, based on the nature of it, as well as the fact that it's common law versus statutory, I would think the same principles apply. And again, and the whole idea that the state can't be put in the position where they have to anticipate and rebut every possible defense that could be out there in a misdemeanor case. That makes no sense. So the purpose of having the defendant in some way raise it, either be through the facts or through testimony that, or argument, is to give the state the opportunity to then, you know, rebut it when they are in a position to present further evidence or argument. And that was not done in this case. And I would, again, say the fact that this was- Wasn't it clear from the police report that, you know, this was a father and a child, a father disciplining his child? I mean, it's not like the state wasn't put on notice and it was a misdemeanor case, you didn't have to have written notice. Wasn't it evident from the police report? No, I think that just the fact that it's a father and child doesn't give rise to that automatic assumption that reasonable parental discipline might be at play. You could have a factual scenario where a parent simply, you know, starts punching a child. And that would not be a situation where just by virtue of the relationship, parental discipline would come up. But that's not what we have here. We didn't have a punching of a child here. Correct. But I guess what I'm saying is that in so far as defendant is suggesting that this, it was incumbent on the state based on the nature of the relationship to infer that that defense would apply, I would disagree. And then I would also say, even if you assume for the sake of argument, then it was disproven. There was the testimony both from the daughter who the judge found credible and the defendant who the judge found incredible. Both their versions of events don't support a finding that defendant was acting within a reasonable right to discipline his child. Her account was that he pretty much just came up on her when she was at the counter. It started with, I think, a tap from his crutch. And then it was the pulling of the cords. And then it was the grabbing of her arm and the pulling of her hair. There was no indication that he was disciplining her for something. He was just attacking her. And then by his account, he only grabbed her arm because she started hitting him first and he, being injured due to his surgery, was trying to maintain his balance. So he played himself. He never portrayed this as a discipline situation. It was a, he was actually preserving himself from a teen daughter who was attacking him, according to him. So, and then I would also, again, submit that this was a bench trial. So even, again, if you take all the evidence, the trial court is presumed to know the law. So if we can assume that the state takes into account reasonable parental discipline when putting on their evidence, there's no requirement that they have to expressly argue it in closing, and especially when the defendant didn't. And the trial court is presumed to know the law regarding reasonable parental or a parent's reasonable right to discipline their child. And it's presumed that the trial court took that into account in finding defendant guilty in this case. Thank you. Thank you. All right. I have a couple of questions. Is there any evidence in this record that the defendant wanted to tell his daughter that he really liked her outfit that day, or that he was hoping she felt better because she didn't go to school today? Or is the evidence pretty clear that he did not want to be disrespected when he wanted to discuss with her a point of concern? I believe the only evidence as to what his motive was in starting the interaction with his daughter came from him. And that was that something about the dog was barking and she had been home. I don't believe there was any regard, nor would it make sense that she would know his motive. However, again, I would say that the trial court found that to be expressly found him to be incredible. So even if that's and that's where the credibility comes in, I disagree with counsel opposing counsel. So in finding the defendant that that testimony incredible, I believe that that provides further support for the argument that the trial court is presumed to know the law and that the state met all the elements met their burden with respect to all the evidence, including any, any non expressly raised affirmative defense. But the trial judge didn't say that he didn't believe the defendant said, I want to talk to you. I thought the credibility issue really boiled down to how those fingerprints got there when there weren't a lot of there I believe the trial court made reference, I'm turning back pages here to, to the defendant in general, and his demeanor on the stand, and the fact that he found the defendant incredible. So I keep the trial court obviously addressed a few of the inconsistencies in the victim, but he found those to be minor. And it's very clear, I think, from the record that that the trial court, he expressly said, why would I observed with the defendant as he testified. So I would say that the trial court rejected the defendant's testimony regarding the motivation, and then that's inherent in the finding of guilt. Or maybe he was just incredible that he was being charged with battery, when he was trying to discipline his child, that might make him a little unhappy. You said that the issue really was self preservation, that's, you know, it had nothing to do with discipline. Didn't he say or didn't he testify that he asked to talk to her a couple times, and she wouldn't respond. And when he did try actually got her attention, she was disrespectful in that she was hitting him. He did testify that he attempted to get her attention. A few times her testimony differed from that. Her testimony was that he tapped her once with his crutch, and then that he was basically immediately on her ripping the cord out of her ear. And then the grabbing and the hair pulling came after that. So based on construing those facts in the light most taking into account that the trial court knows the law, and took all of that into consideration, when determining whether the state met its burden of proving the elements. Did the victim indicate that she did in fact hit the defendant? She did. In an attempt to get away from him, I believe, as he was dragging her by her hair and pulling her by her arm, she admitted to hitting him with her hand, I believe on his head. His account differed and that he claimed that she was the first one to strike and that she struck him with his crutch several times and then also hit, I believe that was about the head as well, and then also used her hands to hit him. Well, he had to have already turned her around and surprised her, as you've described, attacked her, was on her before this all happened, right? How was she going to hit him over his head or over her head? Correct. Her testimony was that he he pulled the cord that startled her, I believe she said she turned, and then he grabbed her arm and her hair. And it was while during while he had that grip on her that she was, according to her testimony, hitting at his head in an attempt to get away. All right, I don't have any other questions, thank you. Thank you. All right, Mr. Russo, do you have any brief reply? Yes, please, your honor. May I begin? Yes. First of all, the state argues that we don't disagree that they proved all of the elements of the offense, but that's not quite accurate. We're saying that they did not prove that Mr. Boyer acted without lawful authority, which we submit is an element of the offense, and it was incumbent upon the state to show that lack of lawful authority because of the relationship between him and the victim. They raised the question or the circumstances of if this had been a jury trial, there would have been no jury instructions submitted, but I'm not sure how they could determine that. And I would direct the court's attention to people versus Roberts cited in our case, which was a situation where the defendant in that case was convicted of domestic battery of his 16-year-old daughter in very similar circumstances, and the court refused to submit his requested jury instructions on the right to discipline the child, and that was ultimately sent back for them to a new trial where that should be submitted, according to the court and Roberts. What we're talking about here is an issue that needs to be addressed, not just in this specific circumstance, but in any situation where a parent is forced to try to use physical discipline for an unruly child, specifically an older child, like is the case here. And I think what we're finding is that we're seeing cases more and more where you're finding loving and caring parents, that are put at criminal jeopardy for essentially just exercising their constitutional right to exercise reasonable discipline over their minor children. And I think this case is a prime example of that. The state argues that the version of events that were testified to don't support the argument that this was an issue of parental discipline, but I mean, the daughter herself testified that he took her earbuds out because she wouldn't listen to him, and that he yelled at her that she couldn't treat him that way, and that he was to listen to him. I mean, clearly, that's an acknowledgement by her that that's exactly why this happened. She knew that's why this happened, and the bottom line was she was in a bad mood and didn't want to deal with it. So I think the version of events that were testified to, specifically by the daughter, do support this argument. And as far as the argument that it was self-preservation, and that was dismissed as not credible, well, there was testimony that there was some self-preservation involved. That was only after the initial contact of trying to get her to listen, and then he testified that as she was hitting him or pulling away, that he lost his balance and held on tighter. I think that only went to the issue of the degree of force that was used to hold her, not to why he initially approached her and tried to instill the discipline in the first place. And my final point, your honors, is that the state says, well, we should assume that the judge knows the laws and the judge considered all this, and that may be the case. However, in this case, this judge did make specific findings of fact here, and he went through his list, and basically what he said was he was making his decision based on his assessment of credibility. He did not mention in any way that he considered parental discipline as a factor in making his decision in finding Mr. Boyer guilty. And we would submit, because he did not mention that he considered that, we have to assume that he did not. And I would suggest that if he had, in fact, applied a parental discipline assessment to these circumstances, this is clearly a situation where this is a parent disciplining a child. That should have been the determination that was made, and that didn't happen here. And I would submit to the court that nothing that Mr. Boyer did during this altercation is very much different from what parents all across this country do every day in stores and other public places when they have a child that's not listening and not obeying them. Again, we would ask that you thank you. That never happens that a child disobeys you, does it? That was a joke. All right, well, Justice Shostak, do you want to go on with your questioning at this point? No, I don't have any questions. Justice Jorgensen. I just want to clarify one point. Your position is that they know it's a parent-child relationship at issue, or as part of the fact pattern here going into the case, and that once the defense raises some testimony or some evidence to indicate that this was disciplined, then the state is then on notice and in its rebuttal has to prove or disprove, I guess, rebut the parental discipline defense. Is that the gist of it? I believe they do, Your Honor, because I believe in order to prove that he acted without lawful authority, they have to show that this was not a circumstance where he was exercising his right to discipline the child. Could they also just simply say that the evidence is incredible as to discipline? Would that be an option for the state? Perhaps, and certainly in circumstances like in a lot of these cases. I mean, you know, if he had used his crutch and started hitting the girl and said he did that to get her attention, well, that would probably be unreasonable. But I don't think that taking out earbuds and physically turning her to face him rises to the level of something that's unreasonable that it amounts to criminal conduct. All right, so him grabbing her arm, that was out of necessity. No, initially he testified that he grabbed her arm to hold her there so that she couldn't continue to ignore him and that he wanted to talk to her. When he said it became necessity was at some point when she started hitting him, he was losing his balance and he held on tighter. And that was his explanation for why it left a bruise. All right, thank you. Thank you. And I have no further questions. Thank you. And thank you, Justice Jorgensen and Justice Shostak. Also, thank you, counsel, for your arguments today. We appreciate your attendance and your arguments. We will take this matter under advisement. We will issue a decision in due course. And I believe now we will stand adjourned for the day and we will leave this meeting. Thank you all. Thank you. Thank you.